**In re Hung–Jung HUANG a/k/a John Huang, Debtor.**

**Bankruptcy No. 94 B 24048.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Jan. 30, 1996.

---

Allen Earl Levin, Chicago, IL, for Debtor.

Office of Craig Phelps, Chapter 13 Trustee, Chicago, IL.

Thomas G. Jaros, Abraham Brustein, Smith Lodge & Schneider, Chicago, IL, for Claimant New Asia Bank.

### FINDINGS OF FACT AND
### CONCLUSIONS OF
### LAW

JACK B. SCHMETTERER, Bankruptcy Judge.

In this proceeding under Chapter 13 of the Bankruptcy Code, trial was held on the Objection of debtor Hung–Jung Huang ("Huang") to the claim of New Asia Bank ("Bank") filed in the amount of $31,254.66. Having considered stipulations of the parties, the evidence received at trial, and the arguments of counsel, the Court now makes and enters the following Findings of Fact and Conclusions of Law:

## I. JURISDICTION

Jurisdiction over this matter lies pursuant to 28 U.S.C. § 1334, 28 U.S.C. 157(a), and the matter is referred to this Court under Rule 2.33 of the General Rules of the United States District Court for the Northern District of Illinois. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

## II. FINDINGS OF FACT

1. The Bank is a creditor of Huang's estate by virtue of two judgments entered against Huang by the Circuit Court of Cook County:

A. Judgment entered November 24, 1993, in the amount of $50,000 (the "November Judgment"); and

B. Judgment entered on February 4, 1994, in the amount of $12,806.77 (the "February Judgment").

2. The November Judgment and the February Judgment were entered by the Circuit Court of Cook County, Illinois, in connection with a lawsuit brought by the Bank to enforce a guaranty dated February 27, 1992, and executed by Huang in favor of the Bank (the "Guaranty").

3. The Guaranty contained the following language: "Except when prohibited by law, I agree to pay the reasonable costs and expenses you incur to enforce and collect this agreement, including attorney's fees and costs."

4. The November Judgment evidences the principal amount owed to the Bank by virtue of the Guaranty. The February Judg-ment evidences an award to the Bank of its attorneys' fees and expenses incurred for the work of its attorneys through December 1, 1993, in seeking to collect on the Guaranty by Mr. Huang.

5. On or about May 30, 1994, Huang sold his residence in Glendale, Wisconsin, which was subject to the Bank's judgment liens on account of the November Judgment and the February Judgment.

6. Huang sold the Glendale Wisconsin property without satisfying the Bank's judg-ment lien claims.

7. In order to complete the sale of the Glendale Wisconsin property, Huang funded a Chicago Title Insurance Company ("CTT") indemnity account with approximately $53,-000 (the "CTT Funds").

8. In August of 1994, the Bank scheduled a sheriff's execution sale in order to foreclose its judgment lien against the Glendale Wis-consin property which Huang had sold in May. The sheriff's levy sale was scheduled for October 3, 1994.

9. Huang filed a voluntary petition under Chapter 13 of the Bankruptcy Code on Au-gust 26, 1994, in the United States Bankrupt-cy Court for the Eastern District of Wiscon-sin.

10. As of August 26, 1994, the total amount owed for principal and post-judgment interest on account of the November Judg-ment was $53,450.00.

11. As of August 26, 1994, the total amount owed for principal and post-judgment interest on account of the February Judg-ment was $13,459.57.

12. For the period of December 1, 1993, through September 30, 1994, the Bank in-curred $9,902.86 in attorneys' fees and costs by employing the law firm of Smith Williams & Lodge Chartered ("SWLC") to enforce and collect the Guaranty, the November Judgment, and the February Judgment.

13. However, the Bank's claim for such work includes time entries, for which reim-bursement in the amount of $539.50 is sought, relating to services rendered by SWLC to collect the November Judgment and February Judgment from a third par-ty—Shie–Ling Liu Chen ("Chen")—not to collect from Debtor.

14. Other than as referred to in Finding 13, attorneys' fees and costs incurred by the Bank in hiring SWLC were actually incurred in the amounts and for the services to collect from Mr. Huang for which recovery is sought here, described in Exhibit NAB 5–19.

15. Other than that referred to in Finding No. 13, the attorneys' fees and costs incurred by the Bank in hiring SWLC were reasonable and necessary to seek collection on the judgment rendered on the Guaranty.

16. For the period of June 1, 1994, through September 30, 1994, the Bank was billed $6,714.12 in attorneys' fees and costs by employing the law firm of Kohner, Mann & Kailas ("KMK") to enforce the Guaranty, the November Judgment, and the February Judgment.

17. Those attorneys' fees and costs were incurred by the Bank in hiring KMK for services described in Exhibits NAB 20 through NAB 23. However, KMK did not adequately document the time required to perform those services, and thus the Bank did not prove by a preponderance of the evidence that the full amount of fees sought therefore was for reasonable and necessary work. To adjust for that deficiency, the claim for KMK's fees is reduced by 25% to arrive at the reasonable amount of compensation for its work that is found to have been necessary.

18. Except as reduced in Finding No. 17, attorneys' fees and costs incurred by the Bank in hiring KMK were reasonable and necessary given the circumstances, in an effort to collect on the guarantee and judgments from Mr. Huang.

19. As of September 30, 1994, and prior to the application of the CTT Funds, the Bank's claim totaled $83,526.55, itemized as follows:

A. Principal and Interest on November Judgment $53,450.00
   *plus*

B. Principal and Interest on February Judgment $13,459.57
   *plus*

C. SWLC Attorney Fees and Costs through 9/30/94 $ 9,902.86
   *plus*

D. KMK Attorney Fees and Costs through 9/30/94 $ 6,714.12

20. On September 30, 1994, the Bank received a payment of $52,271.89 which represented the amount of the CTT funds held by the Chicago Title and Trust Company.

21. The Bank applied the CTT Funds as follows:

A. *First* to payment of KMK fees $ 6,714.12
B. *Second* to payment of SWLC fees $ 9,902.86
C. *Third* to payment of accrued interest on February Judgment $ 652.80
D. *Fourth* to payment of accrued interest on November Judgment $ 3,450.00
E. *Fifth* to payment of principal amount of February Judgment $12,806.77
F. *Sixth* to payment of a portion of the principal amount of the November Judgment $18,745.34

22. The net amount due to the Bank on account of the November Judgment after application of the CTT Funds is thereby asserted to be $31,254.66.

23. The CTT Funds were paid over to the Bank directly in exchange for a release of judgment lien, and the Bank canceled its sheriff execution sale.

24. Huang's case was transferred from the United States Bankruptcy Court for the Eastern District of Wisconsin to this Court on December 6, 1994.

25. On March 2, 1995, the Bank filed a claim in the amount of $31,254.66 against Huang's estate (the "Claim").

26. Huang's Chapter 13 estate is solvent: that is, his non-exempt assets exceed his debt as scheduled and claimed by creditors.

## III. *CONCLUSIONS OF LAW*

1. While two judgments were entered on the Debtor's Guaranty (for the principal debt and fees incurred to that date), all of the Bank's claims did not merge into those payments. Generally following judgment, a plaintiff may not maintain a new action "on the original claim or any part thereof...." 1 Restatement (Second) of Judgments § 18 at 151–52 (1982). In those circumstances, the original claim merges into the judgment.

However, here the Debtor's Guaranty promised to pay not only the principal sum guaranteed but also all attorneys' fees and costs required to collect it. The initial two judgments did not cover the claim for fees made in the instant proceeding, but only covered earlier claims for fees because the instant fees had not been incurred or sought at the time. Ample authority shows that, in this circumstance, the merger rule does not apply to bar the current claim, a claim not heretofore liquidated by either of the earlier judgments. *Lowrance v. Hacker,* 966 F.2d 1153, 1157–58 (7th Cir.1992); *Stein v. Spainhour,* 196 Ill.App.3d 65, 69–70, 142 Ill.Dec. 723, 726, 553 N.E.2d 73, 76 (4th Dist.1990).

2. Interest accrued on the November Judgment and the February Judgment at a rate of 9% per annum from the date each judgment was entered. S.H.A. 735 ILCS 5/2–1303 (1995).

3. Pursuant to the Guaranty, the Bank is entitled to payment of its fees and expenses incurred in the collection and enforcement of the Guaranty.

4. The fees and costs in the amount of $9,902.86 incurred by the Bank through the services of SWLC must be reduced by $539.50. This amount relates to attorneys' fees incurred by the Bank in pursuing Chen, and such fees are not chargeable against Huang.

5. The fees and costs in the amount of $6,714.12 billed to the Bank through the services of KMK must be reduced by 25% to $5,035.59 for reasons set forth in Finding No. 17 herein.

6. The Bank's application of the CTT Funds *first* to payment of KMK fees, *second* to payment of SWLC fees, *third* to payment of accrued interest on the February Judgment, *fourth* to payment of accrued interest on the November judgment, *fifth* to payment of principal amount of $12,806.77 of the February Judgment, and *sixth* to payment of a portion of the principal amount of the November Judgment was proper. *See Herget National Bank of Pekin, et al. v. USLife Title Insurance Company of New York,* 809 F.2d 413, 418 (7th Cir.1987) ("[a]s a general rule, a creditor who holds various accounts of the debtor may, in the absence of direction from the debtor, apply funds to the best advantage of the creditor").

7. The Bank's claim filed March 2, 1995, in the amount of $31,254.66 should be allowed in the amount of $29,036.63, which comprises the balance due on the November judgment, and disallowed in the amount of $2,218.03.

8. As Huang's Chapter 13 estate is solvent, the Bank's claim is entitled to accrue interest on the balance of the November judgment at 9% per annum pursuant to S.H.A. 735 ILCS 5/2–1303 (1995).

9. Section 1325(a)(4) of the Code requires that for a Plan to be confirmable in Chapter 13, unsecured creditors are to get no less than what they would have obtained if the estate were liquidated. In this case, were Huang's estate to be liquidated in a Chapter 7 proceeding, the Bank would receive 100% of its claim plus interest. *See* § 726(a)(5) (requiring that interest be paid on claims in a liquidation if enough funds are left over after unsecured creditors are paid in full); *see also* Local Bankruptcy Rule 700 (it is trustee's duty to pay interest on claims after unsecured claims are satisfied in full).

10. A separate judgment order in favor of claimant will be entered pursuant to the foregoing.